UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| MWENDA MURITHI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24-cv-01425-CSB |
| | ) | |
| LATOYA HUGHES, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Plaintiff is proceeding *pro se* on a complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights at Pontiac Correctional Center.

Plaintiff's complaint is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

1

## ALLEGATIONS

Plaintiff sues IDOC Director LaToya Hughes, Warden Mindi Nurse, Major Travis Bantista, Lieutenant Thomas Dayton, Lieutenant Eutsy, Lieutenant Adalberto Torrez, Jr., Lieutenant Elizabeth Starkey, Sergeant Toverra, Correctional Officer Mary Cerda, Correctional Officer Kendra Ramey, and Correctional Officer Drew C. Cook.

### November 2022 Incident

On November 10, 2022, Plaintiff was charged with a disciplinary infraction by Defendant Drew C. Cook. Defendant Eutsy came to Plaintiff's cell with Defendant Good and awoke Plaintiff claiming they smelled burning paper. Plaintiff was taken from his cell, handcuffed behind his back, and placed in a cage for over two hours. Plaintiff told Eutsy and Toverra that his shoulder was in pain and asked if the cuffs could be moved to the front of his body. These requests were ignored, except that Eutsy told Plaintiff that he should "have thought about that before he pursued litigation." Plaintiff was then sent to healthcare. Dr. Tilden said there was nothing he could do because Toverra told him to leave the cuffs on because Plaintiff "liked to file grievances." Plaintiff took a urine test which came back positive for opioids and alcohol which Plaintiff told staff was from the night before. Plaintiff was prescribed tramadol, so a lieutenant informed Plaintiff that he "would be ok" if there was nothing in his cell. Plaintiff said that "all he had was juices." Plaintiff was kept at the healthcare unit until the next shift when he was told he was going to segregation. Plaintiff did not know why he was going to segregation until he received a ticket written by Cook stating that Cook found homemade intoxicants in Plaintiff's cell. Plaintiff went in front of an adjustment

2

committee (Torrez, Jr. and Cerda) on November 14, 2022, and presented a written statement explaining that there was no mention of anything burnt in his cell and asking that an alcohol test be performed on the liquids found in his cell to show it was not a homemade intoxicant. Plaintiff "believed the committee would perform its duties," so he did not request camera footage as evidence. Plaintiff spent a week in segregation and received a copy of his final disciplinary summary upon release. Plaintiff grieved the discipline and his discipline was upheld.

### October 2023 Incident

On October 21, 2023, Plaintiff realized his cell's water had been shut off. Defendant Thomas Dayton came to his cell a few minutes later and directed Plaintiff to lock up in handcuffs, which Plaintiff did. Dayton then searched Plaintiff's cell. Dayton walked in as if he expected to find something, then told Plaintiff he was going to segregation. Plaintiff asked what was going on and Dayton "looked at a stack of legal materials and grievances and said, 'should have thought of that before pursuing them.'" Plaintiff was taken to a holding cage with his hand handcuffed behind his back for two hours. Dayton walked past into an office but did not close the door. Plaintiff heard Dayton on the phone state that he had not found anything but was taking Plaintiff to segregation anyway. Plaintiff later learned that Dayton was on the phone with Bantista. Plaintiff was strip searched and sent to segregation "clueless as to what he was being accused of." A few days later Plaintiff was served with a ticket alleging he had dumped homemade intoxicants. Plaintiff requested camera footage, an alcohol test, and stated he would present a written statement. On October 30, Plaintiff went before an adjustment

committee (Starkey and Ramey), pleaded not guilty, and presented his written statement. The committee said they would look at the footage and let him know their decision by end of day. Plaintiff spent 14 days in segregation. Upon receipt of his final summary report, he learned that the committee stated that the camera footage was unavailable. Plaintiff believes this means that the footage existed, but the committee was unwilling to review it. Plaintiff also believes all IDOC camera footage must be retained for two years. Plaintiff grieved the discipline and the discipline was upheld.

### Additional Allegations

Plaintiff's shoulder "is still bothering him occasionally."

Plaintiff alleges he has undergone "issues" with exonerating evidence at four different institutions. He believes this shows that disregard of exonerating evidence is based on an IDOC policy or widespread practice traceable to the Director's Office. This is why he named Warden Nurse and Director Hughes.

## ANALYSIS

Plaintiff's allegations related to the handling of his disciplinary tickets, the disciplinary hearings including his allegations of disregarded evidence, and the discipline he received, do not state a due process claim. "When an inmate is placed in conditions more restrictive than those in the general prison population, whether through protective segregation like suicide watch or discretionary administrative segregation, his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time." *Earl v. Racine Cty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013);

4

*Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (holding that the plaintiff's six months and one day in disciplinary segregation did not implicate liberty interest because he was allowed yard time and weekly showers and was not deprived of all human contact or sensory stimuli); *see also Singh v. Gegare*, 651 F. App'x 551, 555 (7th Cir. 2016) (concluding that the plaintiff's 105 days in disciplinary segregation did not implicate liberty interest because "he was permitted several hours of yard time and several showers each week, as well as authorized to leave his cell for visits and appointments"). Here, the conditions in segregation were not particularly harsh compared to ordinary prison life, which is, by definition, already harsh and difficult. Plaintiff was in segregation for one week in 2022 and two weeks in 2023, a comparatively short period. Although Plaintiff is unhappy with the way the disciplinary hearings were handled, he has not stated a claim against any Defendant based on his issues with the hearings.

However, Plaintiff alleges two plausible First Amendment retaliation claims.

The first claim is adequately alleged against Defendant Dayton related to the October 2023 ticket. Plaintiff alleges Dayton expressly wrote the ticket against him because Plaintiff had engaged in filing lawsuits, grievances, or both. This is sufficient to state a claim. *Rasho v. Elyea*, 856 F.3d 469, 476-77 (7th Cir. 2017). No other Defendants are adequately alleged to have engaged in or furthered that ticket based on retaliatory bases.

The second claim is adequately alleged against Defendants Eutsy and Toverra for keeping Plaintiff painfully handcuffed behind his back for several hours in November

2022, each of whom is alleged to have said that they did so (or directed Dr. Tildon to do so) because Plaintiff had filed lawsuits, grievances, or both. See *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015).

The balance of Plaintiff's allegations are too sparsely pleaded to state a claim as to the personal involvement of any other named Defendant in the plausible commission of a violation of Plaintiff's constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## SEVERING CLAIMS

The Court may sever claims and defendants in its discretion to effectively manage its docket and the litigation before it. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."); *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000). But a court generally should not sever claims without a plaintiff's consent or acquiescence. The Court should generally allow the plaintiff to opt for partial dismissal rather than severance. *Taylor v. Brown*, 787 F.3d 851, 858 (7th Cir. 2015); *Mitchell v. Kallas*, 895 F.3d 492, 503 (7th Cir. 2018).

The Court finds Plaintiff's retaliation claim against Dayton based on the 2023 ticket and his retaliation claim against Eutsy and Toverra related to his handcuffing during the investigation of the 2022 ticket belong in separate lawsuits. Allowing the two sets of claims to proceed together in one lawsuit would delay both suits and would be unwieldy and inefficient. Even if the two sets of claims could be seen as somehow stemming from the same series of transactions or occurrences, in its discretion the Court finds these claims must proceed in separate lawsuits.

Plaintiff has 14 days to file a Status Report informing the Court if he desires 1) the Court to sever the 2022 claims from the 2023 claims, which will trigger Plaintiff's responsibility to pay the filing fee or to move to proceed in forma pauperis in the new lawsuit for the severed claims, or 2) to pursue only a) the 2022 claims or b) the 2023 claims, the other set of claims to be dismissed without prejudice.

If Plaintiff wishes to pursue only one set of claims, rather than have the claims severed into separate suits, Plaintiff shall state which claims he wants to pursue in this lawsuit, and which claims he wants the Court to dismiss without prejudice. In making this choice, Plaintiff should consider the implications of any applicable statute of limitations, any potential filing fees he may incur, and all other relevant considerations.

## MOTION TO REQUEST COUNSEL

Plaintiff requests assistance from the Court in obtaining counsel.

The Court undertakes an initial two-part inquiry: (1) whether the plaintiff made a reasonable attempt to obtain counsel or has been effectively precluded from doing so, and, if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself. *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir 2007).

In analyzing the second step, a court must consider the factual and legal difficulty of a plaintiff's claims, and the plaintiff's competence to litigate them, while accounting for the plaintiff's literacy, communication skills, educational level, and litigation experience, plus the plaintiff's intellectual capacity and psychological history if information on those topics is before the court. *Watts v. Kidman*, 42 F.4th 755, 760 (7th Cir. 2022).

Here, Plaintiff has made a reasonable attempt to secure counsel.

The Court finds Plaintiff competent to represent himself at this early stage of his case. Plaintiff's pleadings are largely typed and are clear and well organized. His complaint is to the point and well written. He has some college education and does not report any mental health issues. The legal difficulty of Plaintiff's First Amendment claims is relatively low as federal litigation goes. Plaintiff has pursued several federal lawsuits in the past and is not unfamiliar with the court process. Plaintiff may renew his motion later, if he believes he has encountered difficulties in preparing his case that require the assistance of a lawyer.

**IT IS THEREFORE ORDERED:**

1. **Plaintiff's Motion to Request Counsel [5] is DENIED.**

2. **Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds Plaintiff has stated a First Amendment claim against Defendant Dayton regarding the 2023 disciplinary ticket, and against Defendants Eutsy and Toverra regarding use of restraints during the 2022 incident. Plaintiff does not state a plausible claim against the remaining Defendants and the Clerk is directed to terminate them from this litigation.**

3. **Plaintiff shall within 14 days file a status report as required in the body of the Order, stating his preference as to pursuing one or both sets of claims. Once the issue of the claims is resolved the Court will take appropriate next steps to ensure the litigation moves forward.**

Entered this 11th day of August, 2025.

>             *s/Colin S. Bruce*
> ──────────────────────────
>        COLIN STIRLING BRUCE
>    UNITED STATES DISTRICT JUDGE